## NATHANIEL BOYDEN *v.* THE PRESIDENT AND DIRECTORS OF THE BANK OF CAPE FEAR.

The ordinary relation subsisting at common law between a bank and its customers on a general deposit account is simply that of debtor and creditor. A deposit by a customer, in the absence of any special agreement to the contrary, creates a debt, and the payment by the bank of the customer's checks, discharges such debt *pro. tanto.* The bank or the customer may at any time discontinue their dealings, and the balance of the account between them can be easily ascertained by a simple calculation.

The general rule in adjusting a running account between a bank and its customer is " the first money paid in, is the first money paid out." The first item on the debit side is discharged or reduced by the first item on the credit side. But this rule is not strictly applicable to a case where the account commenced before the late civil war, and was continued during it, as that part of the account which was in Confederate currency is not to be governed by the principles of the common law, but by the ordinance of the 18th Oct., 1865, and the Acts of 1866, Chs. 38 and 39. The account must be divided, and the amount due Oct. 1st, 1861, must be estimated in par funds. To give full effect to the payments of the bank, and allow to the plaintiff, the proper value of his deposits, each payment ought to be deducted from the next preceding deposit or deposits, and when the deposits are in excess of the payments, a balance ought to be struck, and the value of such excess ought to be ascertained according to the scale, and form a part of the general balance due the plaintiff. In this way the nominal amount of the payments will be deducted from the nominal amount of the preceding deposits. The value of the excess of the various deposits at the time they were made with the premium added, will constitute the true balance in the Confederate currency transactions ; and this sum added to the amount of the par funds due Oct. 1st, 1861, will constitute the amount due the plaintiff at the time of the demand made.

Where a bank, during the late civil war, adopted a new usage and custom with its customers, with regard to their deposits in Confederate currency, proof of it cannot be admitted to affect one who had been a regular customer before the war, and continued such during the war, unless it be shown that he had notice of the change in the ordinary usage and custom of the bank as to general deposits.

The fact that a regular customer sometimes made special deposits of bank bills with a bank, has no tendency to show that he had notice of change in the ordinary usage and custom of the bank as to general

deposits, for a special deposit constitutes a contract essentially different from that which arises by implication of law from a general deposit.

A special deposit is a naked bailment, and on demand of the bailor, restitution must be made of the thing deposited. And as the bank acquires no property · in the thing deposited, and derives no benefit therefrom, it is bound only to keep the deposit with the same care that it keeps its own property of a like description.

The case of *Brown* v. *Foust,* 64 N. C. Rep. 672, cited and approved.

This was a civil action brought by the plaintiff to recover from the defendant the balance of a general deposit account kept between him and the branch bank of the defendant at Salisbury.

On the trial at the last Term of the Superior Court of the County of ROWAN, before his Honor, *Henry, J.,* it appeared that the plaintiff, in March, 1864, carried a notice, published by the defendant in the " Carolina Watchman," for all its depositors to withdraw their deposits by a certain time, exhibited it to the Cashier, and demanded of him his deposit as it appeared on the bank book of the plaintiff, kept by an officer of the bank, and offered to check for the same. The Cashier offered to pay the plaintiff in Confederate money, and refused to pay in any other. The plaintiff offered to take payment in specie or bills of the defendant, which was refused. It was proved that the plaintiff, besides his general · deposits of Confederate currency, sometimes made special deposits of bank notes in the bank. The defendant offered to prove what was the custom and usage of its branch at Salisbury, as to the re-payment of deposits made in Confederate currency to depositors, other than the plaintiff, for the purpose of showing that the undertaking of the defendant in regard to deposits of that character, was not that of a debtor to the depositor, but only as a bailee, and the fact of the plaintiff having sometimes made special deposits in bank notes was relied on for the same purpose. His Honor

refused to admit the testimony in the absence of proof, that such usage and custom was known to the plaintiff.

The plaintiff offered in evidence, his bank book, kept by an officer of the bank, the debits and credits of which were admitted to be correct, and the general balance and final balance corresponded with the entries on the books of the bank, except as to the form of making the entries. The defendant offered to put in evidence the books of its branch at Salisbury, but it was objected to by the plaintiff and excluded by the Court.

The counsel for the defendant asked his Honor to charge the jury, that the charges in the debit side of the account current offered by the plaintiff, had to be appropriated in the discharge of the first items in the credit side of the account, continuing the appropriation or application in that way *seriatim*, until the debit side of the account was exhausted, then find the balance over the credits of which the balance consisted, and that the scale would be applicable to the last balance struck; to this his Honor replied that the plaintiff was entitled to receive back in good money, the value of any deposit made by him, and which might be still due and owing, as announced by the defendant himself, from time to time, by striking the balance on plaintiff's book, with premium added.

It was in evidence, that there was no Confederate money issued until Sept., 1861, and none deposited before 1st Oct., 1861.

There was a verdict for plaintiff for $——, and interest on $—— as principal money, and from the judgment rendered thereon, the defendant appealed; and there was an appeal also by the plaintiff.

*Bailey*, for the plaintiff.

*Blackmer & McCorkle* and *Wilson*, for the defendant.

DICK, J.   There was an ordinary deposit account running between the plaintiff and defendant before and during the war, and this action was brought to adjust the matter, and recover the net balance due him.

If the mutual dealings between the parties had been in par funds, there would have been no difficulty in ascertaining the proper balances, as the books of the Bank and the Bank book of. the plaintiff correspond in items and amounts.

The ordinary relation subsisting at common law between a bank and its customers, on a general deposit account, is simply, that of debtor and creditor.   Grant on Banking, 2.

The deposits are regarded as loans without interest to the bank, and the money goes into the general fund, and is used by the Bank for its own benefit in its usual financial operations.   As a compensation for such benefit, there is an implied obligation on the part of the Bank to honor and pay on presentation the checks and drafts of the customer until his deposits are exhausted; and also, repay on the demand of the depositor, any balance which may be due on the settlement of the deposit account.   The deposit, in the absence of any special argument to the contrary, creates a debt, and the payment of the checks of the customer dis-charges such debt *pro tanta.*   The bank or the customer may at any time discontinue their dealings, and the balance of the account between them can be easily ascertained by a simple calculation.

In our case different principles are involved, which complicate the matter, as par funds and depreciated currency, of ranging values, entered into the transactions of the parties.

It was in evidence, that previous to the 1st of October, 1861, there were no deposits of Confederate currency, and the balance then due the plaintiff was in par funds.   Subsequent to that date, the dealings between the parties were in Confederate treasury notes, which soon commenced to

depreciate in value, and that fact was fully known and acted upon by both parties.

These transactions in depreciated currency are, therefore, to be settled according to the Ordinance of the 18th of October, 1865, and the Acts of 1866, ch. 38 and 39, as construed by several decisions of this Court. These deposits were in Confederate currency, and the plaintiff is entitled to their value at the time of deposit, to be ascertained by the scale. Acts of 1867, ch. 44. The payment of the checks and drafts of the plaintiff discharged, *pro tanto*, the debts created by his deposits. *Brown* v. *Foust* 64th N. C., 672.

When the final balance was struck in March, 1864, the defendant was not authorized by law to pay the balance due " in notes of like character and amount as those received ;" but its implied contract was to pay funds equivalent in value to the funds deposited. *Marine Bank* v. *Chandler*, 27 Ill. 525 ; Story on Bailments 66, 28 Ill., 90, 360–463. *Marine Bank* v. *Fulton Bank*; 2 Wallace 252.

The general rule in adjusting a running account between a bank and its customers, is, " the first money paid in, is the first money paid out." The first item on the debit side is discharged or reduced by the first item on the credit side. This rule is not strictly applicable to this case, as that part of the account which was in Confederate currency is not to be governed by the principles of the common law, but is regulated by the legislation above referred to, which was enacted to meet such cases. The account must be divided, and the amount due October 1st, 1861, must be estimated in par funds. To give full effect to the payments of the defendant, and allow to the plaintiff the proper value of his deposits, each payment ought to be deducted from the next preceding deposit, or deposits, and when the deposits are in excess of the payments, then a balance ought to be struck, and the value of such excess ought to be ascertained according to the scale, and form a part of the general balance due the

plaintiff. In this way the nominal amount of the payments will be deducted from the nominal amount of the preceding deposits, and this process can be continued until all the payments are allowed as credits. The value of the excess of the various deposits at the time they were made, with the premium added, will constitute the true balance of the Confederate currency transactions; and this sum added to the amount of the par funds due October 1st, 1861, will constitute the amount due the plaintiff at the time of the demand made in March, 1864.

The defendant cannot justly complain of this arrangement, for the currency was rapidly depreciating, and his payments are taken out of previous deposits, which were of higher value. The plaintiff ought to be satisfied as the payments were made at his request, and accepted in Confederate currency.

The rules established by the Ordinance and Acts referred to, were not intended for executed contracts and completed transactions, but are only applicable to executory contracts and business matters entered into during the war, which a party seeks to adjust and enforce by an action at law.

His Honor properly excluded the evidence offered by the defendant to " prove" what was the " usage and custom of the bank at Salisbury, as to the re-payment of deposits to depositors, other than the plaintiff, made in Confederate currency, for the purpose of showing that the undertaking of defendant in regard to deposits of that character, was not that of debtor and creditor, but only as bailee."

The dealings between the defendant and plaintiff had been as debtor and creditor under rules and usages well established in law, and any arbitrary change in such rules and usages made by the defendant cannot injuriously affect the rights and interests of the plaintiff without bringing home to him positive notice of the change. Until he had been sufficiently notified to the contrary, he had the right to expect

the ordinary course of dealing to be continued.    Moss on Banking, 384.

The fact that the plaintiff made special deposits of bank bills with the defendant has no tendency in showing that the plaintiff had notice of a change in the ordinary usage and custom of the bank as to general deposits.    The receiving of special deposits falls within the general scope of the banking business, and constitutes a contract essentially different from that which arises by implication of law from a general deposit.  A special deposit is a naked bailment, and on demand of the bailor, restitution must be made of the specific thing deposited.    As the bank acquires no property in the thing thus deposited, and derives no benefit therefrom, it is bound only to keep the deposit with the same care that it keeps its own property of a like description.

The plaintiff may have had some particular object in view, in making a special deposit in bank bills, and in so doing he followed the ordinary and well known rules and usages of banks.

The plaintiff knew that Confederate notes were continually depreciating, and it is not reasonable to suppose that he would have allowed the bank to use his funds, and afterwards pay him back the nominal amount in a currency which had greatly depreciated.  This refusal, in March, 1864, to receive said currency, clearly shows that he had no notice of the new usage and custom which the bank alleges it had established with its customers at Salisbury.    No such usage and custom was established by the Parent bank at Wilmington, in its immediate dealings, or there would have been no necessity for the notice which was published March 2nd, 1864, and which is filed as exhibit A, in this case.

The demand made by the plaintiff in March, 1864, was sufficient to entitle him to bring this action and recover the balance due him at that date, with interest.

As the instructions of his Honor were not in accordance

with the rules established for the adjustment and settlement of transactions in Confederate money during the war, there must be a *venire de novo*, and the plaintiff is entitled to costs.

PER CURIAM.                    Judgment reversed.