JOSEPH W. JENKINS & CO. v. WILLIAM H. SMITH and CHAS. S. SMITH.

In a mutual running account between a commission merchant and his customer, where neither party makes any specific application of certain cotton shipped by the customer, in payment of advances made by the merchant: *Held*, that the cotton so shipped was to be applied in payment of the items of the merchant's account, as they were respectively made; *e. g.* the first item on the debit side is discharged or reduced by the first item on the credit side.

(*Jenkins* v. *Beal*, 70 N. C. Rep. 440 cited and distinguished from this; *Boyden* v. *Bank of Cape Fear*, 65 N. C. Rep. 13, cited and approved.)

CIVIL ACTION tried before *Henry J.*, at December (special) Term, 1874, HALIFAX Superior Court.

This case was referred to David A. Barnes who filed the following report, to-wit:

On the 18th of June, 1872, the defendants covenanted under their hands and seals, in manner and form as follows :

" Know all men by these presents, that we Charles S. Smith and Wm. H. Smith of Halifax county, State of North Carolina, are held and firmly bound unto Joseph W. Jenkins and Robert H. Pender, partners under the name and firm of Joseph W. Smith & Co., residing and doing business in the city of Baltimore, State of Maryland, in the sum of ten thousand dollars, to the payment of which sum, well and truly to be made, we bind ourselves, our, and each of our heirs, executors and administrators, jointly and severally, firmly by these presents. Sealed with our seals and dated this 18th day of June, A. D. 1872.

The condition of the above obligation is, that whereas the said J. W. Jenkins & Co., have advanced and loaned to the above bounden Chas. S. Smith, the sum of one thousand dollars, and have agreed to advance and loan to the said Charles S. Smith, between the day of the date hereof, and the first day of August next, the further sum of two thousand dollars,

($2,000.00) and such additional sum between this day and the first day of October next, as the said Joseph W. Jenkins & Co., may in their discretion see fit, and in consideration thereof the said Charles S. Smith has agreed and does hereby agree, to ship between this day and the first day of January, A. D. 1873, a sufficient quantity of cotton, to the said Joseph W. Jenkins & Co., to cover, and sell for, and of the value of double the amount of the advancements, which the said Joseph W. Jenkins & Co., have already made and may hereafter make, within the latest day specified, to the said Charles S. Smith, from the proceeds of which cotton the said Joseph W. Jenkins & Co., are to retain for their own use, their usual commission on sales of cotton, and other legitimate charges, and the amount with interest, which they have advanced and may hereafter advance to the said Charles S. Smith, and the remainder they are to pay over to the said Charles.

Now, therefore, in case the said Charles S. Smith shall comply in all respects with his said agreement, or failing therein shall pay to the said Joseph W. Smith & Co., all such sum or sums as they may advance to him with interest, and moreover the usual commission on the amount and quality of cotton herein stipulated to be shipped to the said Jenkins & Co., by the said Charles S. Smith, and this on or before the first day of January, A. D. 1873, then this obligation shall be void, otherwise shall remain in full force.

C. S. SMITH, (Seal.)
W. H. SMITH, (Seal.)

Executed, being first duly stamped in presence of
ED. CONIGLAND.

At the time of the making of said writing obligatory the plaintiffs were commission merchants in the city of Baltimore, and had then advanced to the defendant Charles S. Smith, the sum of one thousand dollars. Thereafter, and before the first day of October, 1872, they advanced to him six thousand five hundred and thirty dollars and fourteen cents. Between the

first day of October, 1872, and the first day of January, 1873, they advanced to him eleven thousand and twenty-five dollars and twenty-five cents, the aggregate amount advanced being eighteen thousand five hundred and fifty-six dollars and nine cents.

Between the 1st day of October, 1872, and the first day of January, 1873, the defendant, Charles Smith, shipped to the plaintiffs one hundred and sixty-two bales of cotton, which after deducting expenses, including commissions of two and a half per cent, brought the net sum of eleven thousand nine hundred and ninety-seven dollars and forty-seven cents, being a difference between advancements and sales of cotton, of six thousand five hundred and fifty-eight dollars and sixty-seven cents.

The plaintiff kept a general account against the defendant, Charles S. Smith, charging him with advances when made and crediting him with sales of cotton when made, but before the commencement of this action made no specific appropriation of the proceeds of the cotton, to any particular item of the account, nor were they so instructed by the defendant.

The plaintiffs advanced money and accepted drafts for defendant Charles in large sums, after the first day of October, 1872, upon the express promise of said defendant, to ship cotton to meet said advances, the plaintiffs refusing to make such advancements unless the cotton was shipped to reimburse them.

In December, 1872, the defendant, Charles, made an agreement, to-wit : to ship to them forty bales of cotton, the proceeds to be applied to certain acceptances which plaintiffs agreed to make, upon condition of such shipments.

Plaintiffs furnished defendant, Charles, on the 31st day of December, 1872, an itemized account, containing all the items of charge made between the date of the contract and the date of the rendition of the account, and giving credit for the one hundred and sixty-two bales of cotton, showing a balance then due the plaintiffs of twelve thousand four hundred and one dollars and eighty-three cents, and the defendants insisted that

this was a specific appropriation to the items of the account first made, and in exoneration of the liability of the defendants upon their written agreement.

The plaintiffs claimed to charge the defendants with the sum of eleven hundred and eighty-three dollars and fifty cents, the amount of a note given by defendant Charles S. Smith to one Overby. The facts were that Overby, prior to the making of the writing obligatory of the defendants, was indebted to the plaintiffs, and transferred to them the note of Charles S. Smith, in payment of said indebtedness. Charles S. Smith, afterward drew a draft on the plaintiffs for the amount of the said Overby note and it was charged to him as an advancement.

The plaintiffs claimed the right to charge the defendants with the sum of $410.55 commissions on cotton, not shipped according to agreement.

Upon the foregoing facts it is considered and adjudged by me as a matter of law that the plaintiffs are not entitled to charge the defendants with the Overby note as an advancement, neither are they entitled to charge them $410.55 on cotton not shipped as they have charged them with commissions about this amount on advances.

It is further considered and adjudged that the defendants are not entitled to have the proceeds of the cotton applied, first in exoneration of their liability on the said obligation, and it is further adjudged that the plaintiffs are entitled to recover from the defendant W. H. Smith, the sum of $6,558.67, and interest from the 23rd day of January, 1873, and the cost of this action.

To which report the defendant, W. H. Smith, filed the following exceptions, to-wit:

I. That the referee finds as a fact that the plaintiffs advanced to the defendant, Charles S. Smith, $6,530.14 before the 1st day of October, 1872.

II. That said referee finds as a fact, that thereafter, and before the 1st day of October, 1872, they, meaning the plaintiffs, advanced to him, the defendant, Charles S. Smith, $6,530.14,

whereas the sum of $1,321.11, part of the said sum of $6,530.14, was not in fact paid by the plaintiff until the 25th day of October, 1872, and whereas the sum of $670.47 a further part of said sum was likewise not paid by the plaintiffs until the said 25th day of October, 1872.

III. That in estimating the advances made by the plaintiff, for which W. H. Smith is liable, the referee adopted the account of plaintiffs wherein it appears that on the 1st day of August, 1872, the plaintiffs had advanced to Charles S. Smith the sum $4,662.10, whereas William H. Smith has contracted in the bond to be liable only for the sum of $3,000, to be advanced before that date.

V. That said referee finds as a fact that plaintiffs made no specific appropriation of the cotton to any particular items of the account, whereas the plaintiffs, by sending to the defendant on the 31st day of December, 1872, an itemized account containing all the items of charge made between the date of the contract and the date of the rendition of the account, and giving credit for one hundred and sixty-two bales of cotton, showing a balance then due the plaintiffs of $1,2001.83, did in fact and in law make specific appropriations of the proceeds of the cotton to those items of account which were first charged in said account.

VI. That said referee did not rule as a matter of law, arising upon the facts, that the bond mentioned in the said report is discharged as to the defendant, W. H. Smith, by the shipment to the plaintiffs, by the defendant, Charles S. Smith, within the time specified, one hundred and sixty-two bales of cotton.

It appeared from a written account filed by the plaintiffs as a part of their complaint, that the sum of advances claimed to have been made by them to Charles S. Smith, under the contract contained in this bond, amounted on the first day of August, 1872, to $4,662.10.

It also appeared from the said account, that plaintiffs charged as advances made to C. S. Smith, before the first day of October, 1872, two drafts, one for $1,321.11, and one for $670.47,

accepted by them for C. S. Smith before the 1st day of October, but not paid until the 25th day of October, 1872.

The bankruptcy of C. S. Smith having been suggested, the action was prosecuted against W. H. Smith alone.

His Honor overruled the exceptions of the defendant, and gave judgment for the plaintiffs, whereupon the defendant, appealed.

*Moore & Gatling* and *Hill,* for appellants, argued as follows:

As to exception 1, see *Vest* v. *Cooper,* 68 N. C. Rep., 131.

2nd and 3rd exceptions. Drafts for $— and $— were drawn in September and paid in October, not advances under bond, because every advance must of necessity create a separate debt. *Hicks* v. *Critcher,* Phil. 353 ; *Page* v. *Ernstein,* 7 Jones 147. Acceptance created a debt from Jenkins & Co. to holder. Archd. N. P. 297, 148 ; Rev. Code, chap. 13, sec. 2.

4th exception. The words "this day" refer to August 1st. Generally all relative words are read as referring to the nearest antecedent." 2 Parsons on Contracts, p. 513.

In the construction of bonds and obligations, the rule of law is if the bond be a single one, it is to be taken most strongly against the obligee ; but where it has a condition annexed to it which is doubtful, as that is for the ease and favor of the obligor it is to be taken most strongly in his favor. *Bennehan* v. *Webb,* 6 Ired. 57.

5th exception. *Moss* v. *Adams,* 4 Ired. Eq. 42 ; *Jenkins & Co.* v. *Beal,* 70 N. C. 440, only establish that when the payment is made the debtor can make the appropriation ; 2d, that if he does not the creditor can make it at any time before suit brought ; 3d, if neither makes it, the law does.

The latter case differs from ours in this, that no account was rendered, in ours an account was rendered December 31st, and was an appropriation specifically of the payments to the items of account first made in regular order. It was a stated account. Adams Eq. 226 and 228, note 1 ; *Freeland* v. *Horne,*

7 Cranch 147; 1 Greenleaf's Evidence, sec. 197, p. 215 and note. *Walker* v. *Fentress*, 1 Dev. & Bat. 17; Burrill's Law Dictionary. "Account stated." Bouvier's Institutes vol. 4, p. 223. C. S. Smith's acquiesance raised an implied promise to pay balance struck. Archd. N. P. 93.

Effect of account stated: Archd. N. P. 120, 271, note 1. Payment once applied cannot be re-ascribed except by consent. 2 Greenleaf's Evidence, sec. 532, p. 474.

Exception 6th. W. H. Smith was a surety because his liability did not arise till default of C. S. Smith; whereas C S. Smith's liability arose on execution of bond. The duties of joint principals are identical as to third parties and reciprocal as to each other. Had C. S. Smith complied fully with terms of bond could he have sued W. H. Smith for contribution? See Archd. N. P. 248 and 249 as to a joint principal suing for contribution.

W. H. Smith is exonerated by the shipment of 162 bales cotton. "If the obligee defeats the condition of the bond the security is discharged. *Cooper* v. *Arrington & Wilcox*, 2 Dev & Bat. Eq. 90.

The surety is entitled to the benefit of every additional or collateral security which the creditor gets into his hands for the debt for which the surety is bound. As soon as the security is created and by whatever means the sureties interest in it arises and the creditor cannot himself nor by any collusion with the debtor, do any act to impair the security or destroy the surety's interest. He is bound not to do it. A security stand upon the same footing with a payment. As respects the surety the debt is paid. *Nelson* v. *Williams*, 2 Dev. & Bat. Eq. 118.

The principle is that whenever a collateral security on the property of the principal is given or obtained, it amounts to a specific appropriation of those effects to the debt; and therefore the surety is entitled to the benefits of it as well as the creditor, and the creditor is under a duty to the surety not wilfully to impair the security." " The wrong done to the

surety by the creditor is this, that the creditor has a security for his debt on the principal debtor's own property and has destroyed or departed with the same to the prejudice of the surety," not material that surety should know existence of securities. *Smith* v. *McLeod*, 3 Ired. Eq. 390 ; Caine's Cases in End, 2 vol., p. 1, *U. S.* v. *Eckford.*

W. H. Smith contracted that the cotton should be shipped. It was not his duty to see to its application.

*Conigland*, with whom were *Bridges & Son* and *Batchelor* for the plaintiffs, among other points, submitted the following :

The fifth exception, it is submitted, is untenable under all the circumstances of this case.

The referee adjudges, that no application was made by either party before suit brought. But this conclusion is not warranted by the facts found by him.

I collect from the referee's report as facts in the case : That the plaintiffs refused to make any advances to the defendant Charles, after October 1st, 1872, unless he would send cotton to meet the same, and upon his express promise to do so, they advanced to him large sums after that date.

That in December, 1872, the said defendant agreed to forward to the plaintiffs, forty bales of cotton, to meet advances which he then asked.

That from October 1st, 1872, until January 1st, 1873, the difference between the large advances made, and net proceeds of cotton shipped, was only $971.52.

It is submitted, that the foregoing facts, clearly set forth by the referee in his report, show an express appropriation by the plaintiffs, with the assent of the defendant Charles, of the cotton shipped after October 1st, 1872, to the payment of the advances made after that date. The conclusion of the referee, that no application of credits was made by either party, can be construed only as meaning that no appropriation was made on the books of the plaintiffs.

The advances made and the proceeds of cotton shipped, after

October 1st, 1872, nearly tally, showing evidently that the former were made on the faith of the latter. Indeed it would seem from the state of the account, that the cotton was purchased by means of the advancements. The facts present the case of two debts, and payment made to the amount of one which is evidence of an appropriation to that one. Greenleaf's Ev. vol. 2, p. 475. *Marryatt* v. *White*, 2 Stark 101.

But the appellant's counsel insist that the rendition of the account by the plaintiffs to the defendant Charles, is an appropriation to the secured debt in this case, and discharges the same. For this they rely on *Clayton's Case*, and *Simpson* v. *Ingham*, 2 B. & C. 65.

Supposing this position to be correct as a general rule ; it must be taken as subject to exceptions. To give such effect to the rendition of the account in this case, would be not only to ignore the intention of the plaintiffs, but the previous appropriation by the agreement of the parties, which evidently shows that the rendition had no other purpose than to inform the defendant of the state of his account.

Clayton's case holds, that where credits are entered generally on the books, it is an appropriation to the first debts. Moreover that the creditor must apply the payments at the time they are made, or lose his right ; and when no application is made by either party, the law will apply the credits, in behalf of the debtor, to the most burdensome debt.

Now no principle of law can be more clearly established by the current of modern authorities, than the reverse, namely : That the creditor, in default thereof by the debtor, may make the application of credits, at any time before bringing suit. When no application is made by either party, the law will apply the credits to the more precarious debt. Such is the principle enunciated in *Moss* v. *Adams*, 4 Ired. Eq. 42, and in every subsequent case bearing on the point in this Court.

It is only where a running account is kept, and credits are entered generally, that the well established principle of law I have quoted, can operate. If the credits are entered specially

that of course, is an appropriation *per se.* The conclusion, therefore, is irresistible, that the doctrine of *Moss* v. *Adams,* can be applied only, where the accounts are kept without distinction between the classes of debts, and the credits if entered at all, are entered generally. This the law construes as a case of non application, and makes the appropriation to the weaker debt.

But it is argued that while the entry of credits generally may not be held as an appropriation to the first debts, yet, where the creditor goes further, and renders his account in the same way, it is such an appropriation. I admit that nothing else appearing, *Simpson* v. *Ingram,* sustains this view. But the doctrine, as I have always argued, is not applicable to the circumstances of this case, which explain, control and limit, the rendition made by the plaintiffs. The case quoted is referred to in our text books, but I have met with no American decision that goes to the same extent.

It is difficult to understand why a construction should be given to the rendition of an account at variance with that given to an account kept in the same way on the books, as the one is but a copy of the other. Now a recent and well considered case in this Court meets the very point. I refer to *Jenkins & Co.* v. *Beale,* 70 N. C., 440. In that case there were two accounts, one secured by mortgage, and one unsecured, and the statement of the case sets forth that—

" The plaintiffs had kept a general running account with the defendant, &c., making no difference or distinction by which any part of the account could be distinguished as that secured by mortgage from any other part not so secured, and had given the defendant credit on the general account for all sums to which he was entitled to credit. There was no evidence to show any application, by either the plaintiff or defendant, to the payment of any particular part of the account as distinguished from any other part of the account, as secured or unsecured.

Such is the statement upon which the opinion of the Court

20

is based, and it is held that no opplication had been made, and that the credits must be applied to the unsecured debt.

I submit, therefore, that the exception is untenable, and that the judgment should be affirmed.

PEARSON, C. J. It appears on the face of the bond that W. H. Smith was a surety, and we declare that to be a fact. From the view we take of the case, that fact does not very materially affect the merits of the case.

The principal, C. S. Smith, when he forwarded cotton to the plaintiffs, did not make any specific application. The plaintiffs, on the receipt of the cotton made no specific application ; on the contrary they entered the receipts of cotton from time to time, as items in a running account against C. S. Smith, in which he was debited, by the amounts advanced, and credited with the proceeds of the cotton received, and closed up the matter by an *account stated*, setting out the items of debit and credit. In *Jenkins & Co.*, v. *Beal*, 70 N. C. Rep. 440, *it is held*, that when one holds two *distinct debts*, one secured by mortgage, and the other without security and the debtor makes a payment, but does not apply it to the one debt or the other, the creditor has a right to apply it as a credit on the unsecured debt, and if he does not make the application specifically, the law will make the presumption that he applied it to the " most precarious debt," as it is termed, that is, to the unsecured debt. That case does not apply, for here there are not distinct debts and a distinct payment, but a running account in which the money advanced is charged as items of debit, and the proceeds of the cotton is entered as items of credit, without any reference to the fact, that the plaintiffs held the bond sued on as a collateral security for the first items of debit.

Had the plaintiffs made a specific application of the cotton received, to the items of debit outside of the items secured by the bond, it would have raised the question whether he would be allowed, in equity, to do so, to the prejudice of a surety who was bound to see that a certain amount of cotton was de-

livered by his principal, and had a right to expect, that whatever cotton was delivered should be allowed as a credit in discharge of his bond. This question, however, does not arise, for the plaintiffs made no specific application of the cotton, but entered the several lots of cotton received as items in a running account, embracing the whole as one transaction, served up in an account stated and rendered.

In *Boyden* v. *Bank of Cape Fear*, 65 N. C. Rep., 13, it is taken to be settled. "In adjusting a running account between a bank and its customer the rule is, the first money paid in is the first money paid out; the first item on the debit side is discharged or reduced by the first item on the credit side."

This principle applies with full force to a running account between a commission merchant and his customer, and the fact that it was so understood and acted on by the plaintiffs is proved by the account stated.

The fifth and sixth exceptions are allowed.

This makes it unnecessary to consider the other exceptions, for the exceptions allowed discharge the liability of the defendant, W. H. Smith, leaving a large balance to be applied to the indebtedness of C. F. Smith. There will be judgment in favor of W. H. Smith, and the judgment below is reversed as to him.

PER CURIAM.                    Judgment accordingly.