The plaintiff Wallace, trustee, sought to recover possession of, for the purpose of advertising and selling, a locomotive engine which the defendant Gaskins had conveyed to the defendant Grizzard in a deed of *Page 311 
assignment for the benefit of creditors and which had been purchased by the plaintiffs A. L. Shepherd Co. for the defendant T. T. Gaskins from the Smith-Courtney Company of Richmond, Va., on 22 December, 1891, under the following circumstances:
In the fall of 1891 said defendant began to saw lumber in Halifax County, N.C. and to enable him to carry on his operations Shepherd Co. agreed to advance him money and supplies to the amount of $2,000. They commenced to advance him 1 September, 1891. In November, 1891, Gaskins requested them to buy a locomotive for (490) him to use in his said business. They undertook to do this, and on 22 December, 1891, they made the aforesaid purchase, at which time Gaskins owed them over $4,000 on account of advances made him, being over $2,000 more than they originally agreed to let him have. No security was demanded of Gaskins for these advances, except that it was the verbal understanding between Shepherd Co. and Gaskins that his lumber should be sold by and through them.
The negotiations for the purchase of the locomotive were carried on for Gaskins by Shepherd Co. The Smith-Courtney Company first offered to sell if they would indorse the notes. They declined to do this, but agreed if the company would sell and take Gaskins' notes, secured by deed of trust on the property, they would see the notes paid, as they could then hold the notes as their security. The plaintiffs allege that they informed Gaskins of this arrangement, and that it was understood between them and him that the notes were to be their security, if they paid them, and that they were to hold the notes until the account for advances was first paid.
The notes, twelve in number, for $125 each, payable monthly, were then given; and at the same time the deed of trust on the property securing the same was executed and delivered to the plaintiff Gordon Wallace, with power to sell upon default, and the same day was duly recorded in the register of deeds' office for Halifax County, N.C. where the locomotive was carried to be used in the aforesaid business.
Shepherd Co. paid and took up all of these notes, and have kept them ever since they paid them, in an envelope by themselves, as security for the money they paid for them. Gaskins never made any demand for them, or that the deed of trust should be marked (491) satisfied and released, and it remains of record uncanceled.
All of these notes were deposited by the Smith-Courtney Company at banks in Richmond, Va., for collection. As they were taken up some of them were inadvertently stamped by the bank official as "paid."
Shepherd Co. rendered to Gaskins monthly statements of his account with them from 1 September, 1891, to 1 January, 1893. They showed the date, amount and nature of every time advanced Gaskins *Page 312 
to carry on his business in North Carolina, debiting him therewith, and crediting him with all sales of lumber whether shipped direct to them or through them to other parties. These accounts were rendered as they were kept.
They entered the amount paid for each of these notes when taken up on the debit side of the general running account they kept with Gaskins, and this they continued to do until 1 January, 1893, at which time they separated and took these amounts from the general account, and rendered Gaskins a separate statement, showing amount due by him on account of the locomotive purchased to be $1,558.92, and also rendered him a statement of the general account, showing to be due thereon $6,717.11, the two aggregating $8,276.03. The two accounts were kept together up to this date simply as a matter of convenience, and to show how much on all matters they had paid out for Gaskins.
Other statements of their general dealings were rendered after that date, and there was due on the general account for advances at the time of the commencement of this action over $5,000 in addition to the amount he owed on the locomotive purchase.
The above is the plaintiff's version of this transaction. The defendants controvert it in a few particulars only. Gaskins in his testimony did not deny the correctness of the amounts he owes Shepherd (492) Co. as testified to by them and as shown by the accounts introduced as evidence; but he denied the agreement testified to by A. L. Shepherd that they were to hold these notes as their security, and that his general account was to be paid first; but stated that he knew the notes were secured by the deed of trust, and that he never objected to the separation of the accounts, and never demanded possession of the notes, or that the deed be released; that he simply told Shepherd Co. to pay the notes and charge the amount paid to his account — nothing said one way or the other about their holding them as security; that he knew he would need an engine, and was to pay for it the best way he could arrange; that he had nothing to pay with except the lumber; but he admitted he never directed Shepherd Co. to apply any particular lumber to the payment of the notes, but to apply all lumber to his account.
On the trial the defendant Grizzard testified that he was trustee in the deed of trust, and that when the same was executed he knew nothing of the notes sued on, or of the dealings with the Smith-Courtney Co.; that Gaskins never told him anything about the notes before the assignment was made.
The defendant then proposed to ask the witness whether, after he made the assignment, Gaskins made any statement to him about the notes. This was for the purpose of corroborating Gaskins, who had *Page 313 
testified that he instructed Shepherd to pay the notes and charge the amounts paid to his account, and that there was no agreement that he was to take up and hold the notes as an independent security, and that the notes were charged in the account, and Shepherd did not pay them until he wrote to him to do so. The question was excluded.
The counsel for the plaintiffs having referred in his argument to the jury to the fact that A. L. Shepherd Co. In Gaskins' (493) deed of trust were put in the fifth or unpreferred class of creditors, the defendant requested the court to instruct the jury as follows:
"The fact that Shepherd is not preferred in the deed of trust has no bearing on the case."
This instruction was refused.
Upon the issues submitted there was verdict for the plaintiffs, and from the judgment thereon the defendants appealed.
If the testimony of a witness is impeached he may be corroborated by showing that he has made similar statements about the transaction. "The purpose of such evidence is not to prove the principal facts to be established. It is intended to prop and strengthen a witness testifying in respect to such facts, in some way impeached, by showing his consistency in the statements he makes or the account he gives of the matter about which he testifies when not under oath. It tends to help his credibility just as does evidence of his good character or other evidence competent for such purpose." S. v. Whitfield, 92 N.C. 831. This rule applies though the witness is also a party. Bullingerv. Marshall, 70 N.C. 520; Sprague v. Bond, 113 N.C. 551. When, therefore, it was proposed to corroborate what the defendant and witness Gaskins had testified on the trial by showing by the defendant and witness Grizzard that the former had made to him a statement about the transaction in controversy, it should have been allowed. The case states that "for the purpose of corroborating (494) statements made by Gaskins while on the witness stand," the "defendant then proposed to ask the witness (Grizzard) whether after he made the assignment to him, Gaskins made any statement to him about the notes." This was merely an offer to show that Gaskins had made to the witness statements about the payment or settlement of the notes about which the parties are here contending similar to the statement he had made on the witness stand. There was error in excluding the evidence, and because of this error there must be a new trial. *Page 314 
It is proper for us to say that we do not see how the fact that Shepherd Co. were not preferred in the assignment made by Gaskins has any bearing on the matter here in controversy. The issue is, Were the notes paid by Shepherd Co. To the Smith-Courtney Company, or to the banks for that company, or were they bought by Shepherd Co.? It could not possibly facilitate the solution of this question to inquire why Gaskins, when he saw himself under the necessity of making a general assignment, preferred one creditor over another. His Honor should have told the jury, as the defendant requested, that the fact stated above had "no bearing on the case," and thus have counteracted any possible impression made upon the minds of the jury by the remarks of plaintiffs' counsel on this subject.
Whatever may have been the purpose of Shepherd Co. at the time of the purchase of the engine by Gaskins from the Smith-Courtney Company, it is very evident that they paid the eleven notes which were charged against Gaskins in the account rendered, and did not purchase
them. We find no evidence that the Smith-Courtney Company intended to transfer these notes to Shepherd Co. The fact that some of them were marked or stamped "paid" consists exactly with the conduct of all the parties. The cash which Shepherd Co. paid out for (495) Gaskins in the settlement of these notes was charged to him in the accounts just as was the cash paid out for merchandise. This was not an instance of a creditor holding two claims, one secured and one unsecured, and, as it seems to us, the cases of Vick v. Smith, 83 N.C. 80, and Jenkins v. Beal, 70 N.C. 440, have no application here. It seems rather to be a case of the application of payment in a running account according to the rule laid down in Boyden v. Bank, 65 N.C. 13; Jenkins v.Smith, 72 N.C. 296, and Lester v. Houston, 101 N.C. 605. When Shepherd Co. chose to conduct this business as they did, they unequivocally expressed their election to treat these notes as mere vouchers, to be used upon the settlement of the accounts between themselves and Gaskins, and not as valid, subsisting obligations of the latter. If there was no fraud or mistake the cancelation of the notes, the rendition of the accounts, and the tacit assent thereto by the debtor, made the balance stated the true debt between the parties. Hawkins v. Long, 74 N.C. 781. Thereafter their character as obligations for the payment of money could certainly not be revived without the consent of the maker Gaskins. And there seems no evidence of such assent unless it be found in the fact that when Shepherd 
Co. in January, 1893, attempted for some reason to undo the effect of the accounting that had been done by them, and to separate what they were thus pleased to call the "locomotive account" from the other dealings, Gaskins did not object. We do not see that he was called upon to do so. The account *Page 315 
then rendered showed that the notes were paid just as the accounts previously rendered had done.
New trial.
Cited: Burnett v. R. R., 120 N.C. 518.
(496)