GORDON WALLACE et al. v. J. M. GRIZZARD et al.

*Evidence—Corroborative Testimony—Running Account— Instruction to Jury.*

1. Where the testimony of a witness (even when he is a party to the action) is impeached he may be corroborated by showing that he has made similar statement about the transaction testified to— such corroborating testimony not being intended to prove the principal facts to be established, but to help the credibility of the witness just as evidence of his good character, etc.

2. Where, in the trial of an action of claim and delivery of property which had been conveyed by defendant to secure notes given for its purchase, the issue was whether such notes, which had been taken up by the plaintiffs, had been *paid* or *bought* by the plain-

tiffs under an alleged agreement that they were to be security for the money paid out (there being a mutual running account between the parties), the fact that the defendant, maker of the notes, made an assignment for benefit of creditors without preferring the plaintiffs could have no bearing on the case, and the defendant was entitled to have the jury instructed to that effect to remove any possible impression made upon the minds of the jury by comment of counsel on such fact.

3. Where plaintiffs and defendant had mutual running accounts and the former took up certain outstanding secured notes of the latter at various times (which were marked paid by the payees) and rendered stated accounts to the defendant showing that the amounts paid out in taking up the notes had been charged up to him, just as other items were charged: *Held*, that, in the absence of fraud or mistake, the cancellation of the notes, the rendition of the accounts and the tacit assent thereto by the debtor made the balance stated the true debt between the parties and the notes could not be revived as obligations for the payment of money without the consent of the maker, and such consent could not be presumed from the fact that he did not make any objections to an account subsequently rendered, in which the plaintiffs had separated the items of the note payments from the other items of their mutual dealings.

CIVIL ACTION, heard before *Bynum, J.*, and a jury, at Fall Term, 1893, of HALIFAX Superior Court.

The plaintiff Wallace, trustee, sought to recover possession of, for the purpose of advertising and selling, a locomotive engine which the defendant Gaskins had conveyed to the defendant Grizzard in a deed of assignment for the benefit of creditors and which had been purchased by the plaintiffs A. L. Shepherd & Co. for the defendant T. T. Gaskins from the Smith-Courtney Company of Richmond, Va., on December 22, 1891, under the following circumstances:

In the fall of 1891 said defendant began to saw lumber in Halifax county, N. C., and to enable him to carry on his operations Shepherd & Co. agreed to advance him money and supplies to the amount of $2,000. They commenced

to advance him September 1, 1891. In November, 1891, Gaskins requested them to buy a locomotive for him to use in his said business. They undertook to do this, and on December 22, 1891, they made the aforesaid purchase, at which time Gaskins owed them over $4,000 on account of advances made him, being over $2,000 more than they originally agreed to let him have. No security was demanded of Gaskins for these advances, except that it was the verbal understanding between Shepherd & Co. and Gaskins that his lumber should be sold by and through them.

The negotiations for the purchase of the locomotive were carried on for Gaskins by Shepherd & Co. The Smith-Courtney Company first offered to sell if they would indorse the notes. They declined to do this, but agreed· if the company would sell and take Gaskins' notes, secured by deed of trust on the property, they would see the notes paid, as they could then hold the notes as their security. The plaintiffs allege that they informed Gaskins of this arrangement, and that it was understood between them and him that the notes were to be their security, if they paid them, and that they were to hold the notes until the account for advances was first paid.

The notes, twelve in number, for $125 each, payable monthly, were then given; and at the same time the deed of trust on the property securing the same was executed and delivered to the plaintiff Gordon Wallace, with power to sell upon default, and the same day duly recorded in the Register of Deeds' office for Halifax county, N. C., where the locomotive was carried to be used in the aforesaid business.

Shepherd & Co. paid and took up all of these notes, and have kept them ever since they paid them, in an envelope by themselves, as security for the money they paid for them.

Gaskins never made any demand for them, or that the deed of trust should be marked satisfied and released, and it remains of record uncanceled.

All of these notes were deposited by the Smith-Courtney Company at banks in Richmond, Va., for collection. As they were taken up some of them were inadvertently stamped by the bank official as "paid."

Shepherd & Co. rendered to Gaskins monthly statements of his account with them from September 1, 1891, to January 1, 1893. They showed the date, amount and nature of every item advanced Gaskins to carry on his business in North Carolina, debiting him therewith, and crediting him with all sales of lumber, whether shipped direct to them or through them to other parties. These accounts were rendered as they were kept.

They entered the amount paid for each of these notes when taken up on the debit side of the general running account they kept with Gaskins, and this they continued to do until January 1, 1893, at which time they separated and took these amounts from the general account, and rendered Gaskins a separate statement, showing amount due by him on account of the locomotive purchased to be $1,558.92, and also rendered him a statement of the general account, showing to be due thereon $6,717.11, the two aggregating $8,276.03. The two accounts were kept together up to this date simply as a matter of convenience, and to show how much on all matters they had paid out for Gaskins.

Other statements of their general dealings were rendered after that date, and there was due on the general account for advances at the time of the commencement of this action over $5,000 in addition to the amount he owed on the locomotive purchase.

The above is the plaintiff's version of this transaction. The defendants controvert it in a few particulars only.

Gaskins in his testimony did not deny the correctness of the amounts he owes Shepherd & Co. as testified to by them and as shown by the accounts introduced as evidence; but he denied the agreement testified to by A. L. Shepherd that they were to hold these notes as their security, and that his general account was to be paid first; but stated that he knew the notes were secured by the deed of trust, and that he never objected to the separation of the accounts, and never demanded possession of the notes or that the deed be released; that he simply told Shepherd & Co. to pay the notes and charge the amount paid to his account—nothing said one way or the other about their holding them as security; that he knew he would need an engine, and was to pay for it the best way he could arrange; that he had nothing to pay with except the lumber; but he admitted he never directed Shepherd & Co. to apply any particular lumber to the payment of the notes, but to apply all lumber to his account.

On the trial the defendant Grizzard testified that he was trustee in the deed of trust, and that when the same was executed he knew nothing of the notes sued on, or of the dealings with the Smith-Courtney Co.; that Gaskins never told him anything about the notes before the assignment was made.

The defendant then proposed to ask the witness whether after he made the assignment Gaskins made any statement to him about the notes. This was for the purpose of corroborating Gaskins, who had testified that he instructed Shepherd to pay the notes and charge the amounts paid to his account, and that there was no agreement that he was to take up and hold the notes as an independent security, and that the notes were charged in the account, and Shepherd did not pay them until he wrote to him to do so. The question was excluded.

The counsel for the plaintiffs having referred in his argument to the jury to the fact that A. L. Shepherd & Co. in Gaskins' deed of trust were put in the fifth, or unpreferred class of creditors, the defendant requested the Court to instruct the jury as follows:

"The fact that Shepherd is not preferred in the deed of trust has no bearing on the case."

This instruction was refused.

Upon the issues submitted there was verdict for the plaintiffs, and from the judgment thereon the defendants appealed.

*Mr. J. M. Mullen,* for plaintiffs.

*Messrs. T. N. Hill* and *W. H. Day,* for defendants (appellants).

BURWELL, J.: If the testimony of a witness is impeached he may be corroborated by showing that he has made similar statements about the transaction. "The purpose of such evidence is not to prove the principle facts to be established. It is intended to prop and strengthen a witness testifying in respect to such facts, in some way impeached, by showing his consistency in the statements he makes or the account he gives of the matter about which he testifies when and when not under oath. It tends to help his credibility just as does evidence of his good character or other evidence competent for such purpose." *State* v. *Whitfield,* 92 N. C., 831. This rule applies though the witness is also a party. *Bullinger* v. *Marshall,* 70 N. C., 520; *Sprague* v. *Bond,* 113 N. C., 551. When, therefore, it was proposed to corroborate what the defendant and witness Gaskins had testified on the trial by showing by the defendant and witness Grizzard that the former had made to him a statement about the transaction in controversy it should have been

allowed. The case states that "for the purpose of corrob-
orating statements made by Gaskins while on the witness
stand" the "defendant then proposed to ask the witness
(Grizzard) whether after he made the assignment to him
Gaskins made any statement to him about the notes."
This was merely an offer to show that Gaskins had made to
the witness statements about the payment or settlement of
the notes about which the parties are here contending simi-
lar to the statement he had made on the witness stand.
There was error in excluding the evidence, and because of
this error there must be a new trial.

It is proper for us to say that we do not see how the fact
that Shepherd & Co. were not preferred in the assignment
made by Gaskins has any bearing on the matter here in
controversy. The issue is, Were the notes *paid* by Shepherd
& Co. to the Smith-Courtney Co., or to the banks for that
company, or were they *bought* by Shepherd & Co.? It
could not possibly facilitate the solution of this question to
inquire why Gaskins, when he saw himself under the
necessity of making a general assignment, preferred one
creditor over another. His Honor should have told the
jury, as the defendant requested, that the fact stated above
had "no bearing on the case," and thus have counteracted
any possible impression made upon the minds of the jury
by the remarks of plaintiffs' counsel on this subject.

Whatever may have been the purpose of Shepherd & Co.
at the time of the purchase of the engine by Gaskins from
the Smith-Courtney Co., it is very evident that they *paid*
the eleven notes which were charged against Gaskins in
the account rendered, and did not *purchase* them. We find
no evidence that the Smith-Courtney Co. intended to trans-
fer these notes to Shepherd & Co. The fact that some of
them were marked or stamped "paid" consists exactly with
the conduct of all the parties. The cash which Shepherd

& Co. paid out for Gaskins in the settlement of these notes was charged to him in the accounts just as was the cash paid out for merchandise. This was not an instance of a creditor holding two claims, one secured and one unsecured, and, as it seems to us, the cases of *Vick* v. *Smith*, 83 N. C., 80, and *Jenkins* v. *Beal*, 70 N. C., 440, have no application here. It seems rather to be a case of the application of payment in a running account according to the rule laid down in *Boyden* v. *Bank*, 65 N. C., 13; *Jenkins* v. *Smith*, 72 N. C., 296, and *Lester* v. *Houston*, 101 N. C., 605. When Shepherd & Co. chose to conduct this business as they did they unequivocally expressed their election to treat these notes as mere vouchers, to be used upon the settlement of the accounts between themselves and Gaskins, and not as valid, subsisting obligations of the latter. If there was no fraud or mistake the cancellation of the notes, the rendition of the accounts, and the tacit assent thereto by the debtor, made the balance stated the true debt between the parties. *Hawkins* v. *Long*, 74 N. C., 781. Thereafter their character as obligations for the payment of money could certainly not be revived without the consent of the maker Gaskins. And there seems no evidence of such assent unless it be found in the fact that when Shepherd & Co. in January, 1893, attempted for some reason to undo the effect of the accounting that had been done by them, and to separate what they were thus pleased to call the "locomotive account" from the other dealings, Gaskins did not object. We do not see that he was called upon to do so. The account then rendered showed that the notes were *paid* just as the accounts previously rendered had done.

New Trial.